# In the United States Court of Federal Claims

**NOT FOR PUBLICATION**

No. 26-28T
(Filed: September 1, 2026)

| | |
|---|---|
| **JUSTINE B. YEN,** | ) |
| *Plaintiff,* | ) |
| v. | ) |
| **UNITED STATES,** | ) |
| *Defendant.* | ) |

*Justine B. Yen*, Naperville, IL, pro se.

*Tanner Stromsnes*, Trial Attorney, Tax Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant. With him on the briefs were *Brett A. Shumate*, Assistant Attorney General; and *Joshua Wu*, Deputy Assistant Attorney General, and *Jason Bergman*, Assistant Director, Tax Litigation Branch, Civil Division, U.S. Department of Justice.

**OPINION AND ORDER**

***BONILLA, Judge***.

Pro se plaintiff Justine B. Yen alleges a yearslong pattern of mistreatment by the United States Internal Revenue Service (IRS) for which she seeks nearly $50,000 in damages. Ms. Yen's formally pleaded claims in her original complaint focus on tax years 2015 and 2018. In a series of supplemental filings, she raises myriad issues related to ten other tax years. The government moves to dismiss Ms. Yen's refund claim for tax year 2015 for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) and seeks summary judgment limiting Ms. Yen's potential recovery for tax year 2018 under RCFC 56.[1] In

[1] Ms. Yen insists she is asserting illegal exaction claims rather than tax refund claims. ECF 19 at 1–2 ("Defendant's attempt to frame this action as a standard, routine 'tax refund' case mischaracterizes the core injury and undermines the governing authority of this Court. This is fundamentally a

response, Ms. Yen proffered an amended complaint.[2] For the reasons set forth below, defendant's motions are granted, and the Court sua sponte dismisses several other purported claims raised by Ms. Yen for lack of subject-matter jurisdiction.

## BACKGROUND

Ms. Yen's self-prepared IRS Form 1040 (U.S. Individual Income Tax Return) for tax year 2015 reports she had no taxable income. She alleges that, despite this, the IRS "issued a tax bill exceeding $10,000.00," which she reportedly paid. ECF 1 at 4. Ms. Yen claims that instead of owing over $10,000, she was entitled to a $956 refund. In support, she asserts the IRS failed to account for $10,000 in individual retirement account (IRA) rollover contributions and a $6,500 standard IRA contribution, which she calls "non-taxable and deductible events." *Id.* She submits that these failures led to the over-$10,000 tax bill for 2015. The government, for its part, maintains the IRS has no record of either Ms. Yen's federal income tax return for tax year 2015 or her alleged payment of over $10,000 that year.

Ms. Yen's claim for tax year 2018 centers on the allegation that her $59,144 IRA distribution was taxed twice: once after being added to her $7,585 pension distribution and treated as income, and again on its own as a "Qualified Plan F5329."[3]

---

constitutional Illegal Exaction action . . . ." (emphasis omitted)). As explained *infra*, there is no legal distinction between illegal exaction claims and tax refund claims in this context.

[2] To avoid prejudicing Ms. Yen's claims as initially pleaded, the Court construes her August 21, 2026 filing (ECF 22) as another supplement to her original complaint (ECF 1), as already supplemented by leave of the Court on January 14, 2026 (ECF 5–7), rather than an amended complaint.

[3] "Qualified Plan F5329" refers to a financial plan, such as a retirement plan or health savings account (HSA), for which a filer was required to submit IRS Form 5329. ECF 1 at 2 (emphasis omitted). Per the 2018 instructions for line 59 of IRS Form 1040, a filer may have been required to use Form 5329 to calculate "additional tax" owed "on IRAs, other qualified retirement plans, etc." if:

> 1. [They] received an early distribution from (a) an IRA or other qualified retirement plan, (b) an annuity, or (c) a modified endowment contract entered into after June 20, 1988, and the total distribution wasn't rolled over.
>
> 2. Excess contributions were made to [their] IRA, Coverdell education savings account (ESA), Archer MSA, health savings account (HSA), or ABLE account.
>
> 3. [They] received a taxable distribution from a Coverdell ESA, qualified tuition program, or ABLE account.
>
> 4. [They] were born before July 1, 1947, and didn't take the minimum required distribution from [their] IRA or other qualified retirement plan.

INTERNAL REVENUE SERV., TAX YEAR 2018: 1040 INSTRUCTIONS 104 (2020), *available at* https://perma.cc/M95L-D4G3 (cleaned up). The 2018 instructions for IRS Form 5329 provide that its purpose was "to report additional taxes on IRAs, other qualified retirement plans, modified endowment contracts, Coverdell ESAs, QTPs, Archer MSAs, HSAs, or ABLE accounts." INTERNAL

ECF 1 at 2 (emphasis omitted) (citing ECF 1-1 at 5). Ms. Yen argues the first resulting assessment ($8,749) was correct, while the second resulting assessment ($7,202) was an improper duplicative tax. She seeks a refund of $10,653 for tax year 2018, citing an IRS Form 1040 Account Transcript dated December 27, 2025, reporting her "[a]ccount balance" of "−$10,653." ECF 1-1 at 10. It is unclear precisely why this account transcript indicates Ms. Yen was owed $10,653 for tax year 2018, and that figure seemingly does not include the contested $7,202 double tax that is the subject of this litigation.[4] Yet, as pled, the full amount of Ms. Yen's claim for tax year 2018 appears to be $10,653, plus interest. Ms. Yen filed her original federal income tax return for tax year 2018 on April 2, 2020.[5]

Ms. Yen further alleges, albeit in less detail, errors in the IRS's handling of her tax returns for tax years 2012, 2013, 2014, 2016, 2017, 2019, 2021, 2022, 2023, and 2024. ECF 22 at 1–4. For 2012, Ms. Yen asserts she made an overpayment of $1,108, with no discernible explanation.[6] She claims an overpayment of $1,771 for tax year 2013, also without clear explanation.[7] For tax year 2014, Ms. Yen states she made an overpayment of $4,980 and argues that insofar as this claim may be otherwise barred by the applicable statute of limitations, the statute of limitations should be tolled per the "Discovery Rule Exception," as she "had no notice" of her claim until "an audit revealed that a traditional IRA distribution was double-taxed."[8] ECF 22 at 2. For tax year 2016, Ms. Yen makes one allegation that reads, in its entirety: "The refund shortfall is $960." ECF 22 at 2. For tax year 2017, Ms. Yen alleges she paid

---

REVENUE SERV., 2018: INSTRUCTIONS FOR FORM 5329 1 (2020), *available at* https://perma.cc/U9G7-N8BB (cleaned up).

[4] The one-page IRS transcript appended to Ms. Yen's complaint is incomplete. A six-page transcript for tax year 2018 is appended to the government's motion for summary judgment. *Compare* ECF 1-1 at 10, *with* ECF 21-1 at 2–7. Both transcripts show an overall credit balance of $10,653. *Compare* ECF 1-1 at 10, *with* ECF 21-1 at 7. This figure is largely accounted for by a series of generic abatements including, most significantly, an October 6, 2025 abatement in the amount of $10,172. ECF 21-1 at 6.

[5] Ms. Yen's April 2, 2020 filing of her federal income tax return for tax year 2018 postdated her extended filing deadline of October 15, 2019, by nearly six months, resulting in an assessment of nearly $3,000 in penalties and interest. ECF 21-1 at 2.

[6] In support of her tax year 2012 claim, Ms. Yen cites "Exhibit 1," which consists of two hand-drawn timelines. ECF 22 at 1, 5–6. While the Court appreciates Ms. Yen's effort to elucidate her theory of recovery with visual aids, they are not readily understood. The timeline begins in 2017, with no mention of 2012. Ms. Yen is reminded that each claim must be fully explained in writing. RCFC 10(b) ("A party must state its claims or defenses in numbered paragraphs . . . ."); RCFC 8(a) ("A pleading that states a claim for relief must contain[] . . . a short and plain statement of the claim showing the pleader is entitled to relief . . . .").

[7] In support of her tax year 2013 claim, Ms. Yen refers to a self-prepared IRS Form 1040 for tax year 2023, which she erroneously describes as "an original physical Form 1040-X filed on April 10, 2017." ECF 22 at 1 (citing ECF 22 at 7–8).

[8] It is unclear whether the alleged double taxation referred to here is the above-described double taxation from tax year 2018 or a separate double taxation from tax year 2014.

a total of $13,369.42 ($8,553 in withholding and $4,816.42 in payments) but owed only $11,133, resulting in an overpayment of "$2,236.43" [sic].[9] ECF 22 at 2. Ms. Yen's $4,427 demand for tax year 2019 fails to provide a clear explanation for why she is entitled to the claimed relief. ECF 22 at 3. The same is true of Ms. Yen's tax year 2021 claim in the amount of $2,908. ECF 22 at 3. For tax year 2022, Ms. Yen charges that the IRS improperly disregarded $3,933 in withholding that should have been credited to her account.[10] ECF 22 at 3. Ms. Yen claims that, compounding this error, the IRS seized $1,608 from her 2024 refund to satisfy the assessed liability for tax year 2022. ECF 6 at 2 ("By way of Notice CP16 (Dec. 29, 2025), the [IRS] seized $1,608.00 from Plaintiff's 2024 refund to satisfy a[] [Substitute for Refund (SFR)]-based assessment for 2022."); ECF 22 at 4. Ms. Yen seeks refunds of $3,589.62 for tax year 2022[11] and $1,608 for tax year 2024. ECF 22 at 3–4. As for tax year 2023, Ms. Yen suggests a total overpayment of $3,188, though she requests a refund of only $280. *Contrast* ECF 9 at 2 (referencing "a $280 overpayment for the [2023] period" that "was transferred to cover [a] fabricated 2018 debt"), *and* ECF 22 at 4 ("The 2023 claim asset total is $280."), *with* ECF 19 at 2, 4 (referencing "a $2,908.00 overpayment in 2023" used to "offset . . . the 2018 bottomless hole, utilizing a fabricated liability pretext to drain active credit principal mid-litigation" (emphasis omitted)).

In sum, Ms. Yen appears to seek the following monetary relief for tax years 2012 through 2019 and 2021 through 2024, plus interest:

| Tax Year | Amount |
|---|---|
| 2012 | $1,108.00 |
| 2013 | $1,771.00 |
| 2014 | $4,980.00 |
| 2015 | $956.00 or over $10,000.00[12] |
| 2016 | $960.00 |
| 2017 | $2,236.42 |
| 2018 | $10,653.00 |

[9] Presumably, $2,236.43 is a typo, and Ms. Yen intended to write $2,236.42.

[10] For clarity, there is a $297 discrepancy in claimed federal income tax withholding for tax year 2022 in Ms. Yen's filings. *Compare* ECF 7 at 1 ($3,933), ECF 9 at 2 (same), and ECF 22 at 3 (same), *with* ECF 6 at 2 ($3,636). For the limited purpose of issuing today's decision, the Court adopts the higher amount since tax year 2022 is not substantively addressed.

[11] The $3,589.62 figure is calculated as follows: Ms. Yen's 2022 withholding ($3,933), minus $878 in legitimate taxes, plus an unexplained $534.62. ECF 22 at 3.

[12] Ms. Yen alleges that the IRS wrongfully charged her, and she erroneously paid, over $10,000 for tax year 2015, even though the IRS in fact owed her a refund of $956 for that year. That scenario suggests a refund claim for over $10,956. But Ms. Yen's most recent filing claims only $956. *Contrast* ECF 1 at 4 (describing 2015 "illegal exaction of over $10,000" that "Plaintiff paid . . . in good faith, despite being entitled to a $956.00 refund"), *and* ECF 7 at 15 (claiming "$10,000.00+ (Estimated/ Unascertained): Relating to Tax Year 2015"), *and* ECF 22 at 2 ("The IRS manually altered a tax-free $10,000.00 rollover contribution into a taxable distribution to manufacture an artificial tax assessment of over $10,000.00."), *with* ECF 22 at 2 ("The expected refund [for 2015] is $956.00.").

| | |
|---|---|
| 2019 | $4,427.00 |
| 2021 | $2,908.00 |
| 2022 | $3,589.62 |
| 2023 | $280.00 |
| 2024 | $1,608.00 |
| **Total** | $35,477.04 or over $44,521.04[13] |

Ms. Yen reportedly endeavored to resolve some of these tax disputes administratively—principally, tax year 2018—before resorting to litigation. She alleges in her original complaint: "Despite dozens of phone calls over a three-year period, [IRS] agents repeatedly and erroneously reassured [her] the assessment [(i.e., the allegedly duplicative tax on her IRA in tax year 2018)] was correct, failing to disclose the double-taxation hidden in the transcript." ECF 1 at 3. Ms. Yen filed an IRS Form 1040-X (Amended Individual U.S. Income Tax Return) for tax year 2018 on May 16, 2023. It is unclear what she claimed in that first amended return, but it was initially denied on January 12, 2024, as untimely (i.e., filed more than three years after her original April 2, 2020 IRS Form 1040).[14] The IRS Independent Office of Appeals reinstated her claim on June 4, 2025. Ms. Yen filed a second Form 1040-X for tax year 2018 on October 6, 2025, claiming a $7,808 refund. The second Form 1040-X asserts the same double-taxation theory advanced here, yet it is unclear why the amount claimed on that form is $7,808 rather than $7,202 (i.e., the alleged amount of the erroneous tax) or $10,653 (i.e., the amount Ms. Yen now claims for tax year 2018). Ms. Yen represents that an IRS Chicago Field Office agent informed her during an in-person visit the week of December 8, 2025, that her second Form 1040-X was being reviewed for timeliness. It is not clear whether either of the amended returns for tax year 2018 has been substantively reviewed or decisioned by the IRS, but Ms. Yen reports receiving a check in the amount of $6,037.51 from the IRS dated May 1, 2026. The government represents that the check was for tax year 2018. According to Ms. Yen, she "promptly physically voided the check and returned it with a formal rejection letter to the IRS" because she believed the payment to be "a panicked attempt to execute a litigation 'pick-off' and force a settlement" that would "short-change[]" her.[15] ECF 19 at 3.

Throughout her filings, Ms. Yen accumulates the following miscellaneous claims and attachments with little context:

---

[13] Ms. Yen alleges her claims add up to a pre-interest total of $48,265.05. ECF 22 at 4. It is unclear how she calculated this sum.

[14] Ms. Yen did not append her original or first amended return for tax year 2018 to any of her filings.

[15] In an August 28, 2026 submission rejected by the Clerk's Office as defective, Ms. Yen represents that the IRS sent her a second check totaling $5,473.94, dated July 24, 2026, which she "rejected, voided, and returned . . . to protect her true money baseline." It is unclear which tax year this refund check was associated with.

- IRS issued a "formal partial disallowance notice [on March 13, 2026], attempting to retroactively shave down Plaintiff's credit claims mid-suit," ECF 19 at 3;

- IRS issued a notice of intent to seize $1,633.42 in assets dated June 9, 2025, ECF 1-1 at 19;

- IRS assessed a "fabricated debt[]" for tax year 2023, totaling $4,248, on January 12, 2026, ECF 9 at 1 (citing ECF 9 at 6–7);

- IRS "manufactured [an] artificial delinquency" by recording the filing date of her IRS Form 1040 for tax year 2018 as October 4, 2021, rather than January 25, 2020,[16] *id.*;

- IRS notified Ms. Yen by letter dated June 11, 2025, that certain penalties and interest would be removed from her account in recognition of her "good history of timely filing and timely paying," purposefully misleading her, as the agency "never intended to release the resulting credits" and "intended to continue fabricating new debts," *id.* at 1–2 (quoting *id.* at 11);

- IRS coerced Ms. Yen into a payment agreement for tax year 2018 and fraudulently induced her assent to an installment contract for tax year 2022, *id.* at 2;

- Through a campaign of "notices such as Notice CP16 and CP2000, the [IRS] uses the threat of an audit and heavy penalties to chill the Plaintiff's exercise of her Due Process rights," *id.* at 4; *accord* ECF 19 at 2;

- IRS imposed "litigation freeze[s]" and "legally lock[ed] the tax module against automated credit removals during pending federal litigation,"[17] ECF 19 at 2;

- IRS created a "debt fabrication loop" whereby the IRS "siphon[s] money across forward and backward years indefinitely with no end in sight"—citing, by way of example, "mov[ing] [Ms. Yen's] true credit principal from 2018 and park[ing] it inside the 2019 module, where it is being held hostage until individual IRS operators can manufacture or discover another phantom liability to permanently offset and siphon away [Ms. Yen]'s sovereign assets," *id.* at 3–4;

[16] A certified IRS transcript of Ms. Yen's 2018 tax account documents the filing date as April 2, 2020. ECF 21-1 at 2.

[17] Ms. Yen alleges, for example, that by "[e]xecuting an intentional manual override of the active [Transaction Code (TC)] 520 Litigation Freeze, an operator systematically wiped out my historical payment, levy, and installment records, brutally dropping my stable Extracted credit balance down to $0.00[ ]behind my back." ECF 19 at 3 (emphasis omitted).

- IRS "fabricat[ed] and issu[ed] a CP89 user fee notice in September 2025—intentionally timed to systematically shave off and absorb [Ms. Yen's] 2018 credits," *id.* at 5 (emphasis omitted);

- IRS assessed funds dating as far back as tax year 2009, "violati[ng] the 10-year statutory limitation on collections under [26 U.S.C.] § 6502(a)," ECF 19 at 5;

- IRS charged Ms. Yen "arbitrary user fees ($435, $210, $205, $135, and $100) without ever presenting a physical itemized invoice or billing receipt to validate the charges," *id.* (emphasis omitted); and

- IRS seized Ms. Yen's income without first serving her with "the mandatory statutory 30-day pre-levy notices," *id.* at 6 (citing 26 U.S.C. § 6331(d)).

Ms. Yen insists "[t]hese are not a series of errors; it is a documented pattern of fraud intended to exact property and mislead this Court as to the true state of [her] accounts. These are not computer errors either, there are human[s] behind th[is] deliberate fraud against foreign born senior citizens." ECF 9 at 3.

Ms. Yen filed this action on January 9, 2026.[18] The government seeks dismissal of Ms. Yen's tax year 2015 claims, citing Ms. Yen's failure to file the jurisdictionally required administrative claim. The government also seeks to limit Ms. Yen's potential recovery regarding her 2018 tax year claims to a principal of $4,452. The government's dispositive motions do not address the claims and charges included in Ms. Yen's supplemental filings regarding tax years 2012, 2013, 2014, 2016, 2017, 2019, 2021, 2022, 2023, and 2024.

## DISCUSSION

### I. Legal Standard

Plaintiffs must establish that the Court has subject-matter jurisdiction over their claims by preponderant evidence. *Estes Exp. Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014). In assessing a motion to dismiss filed under Rule 12(b)(1), "[t]he court is not limited to the pleadings to assure itself of its jurisdiction; it may 'inquire into jurisdictional facts' to confirm jurisdiction." *Bitscopic, Inc. v. United States*, 166 Fed. Cl. 677, 696 (2023) (quoting *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991)); *accord Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (holding that in evaluating a complaint for sufficiency under Rule 12(b)(6), the Court is "'not limited to the four corners of the complaint'. . . [but] may also look to 'matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record'" (quoting 5B WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed. 2004))).

[18] On February 4, 2026, the Court denied Ms. Yen's request for emergency injunctive relief seeking to enjoin the IRS from further tax collections. ECF 11.

Moreover, the Court is obligated to sua sponte dismiss claims over which it does not have subject-matter jurisdiction. RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action."); *see Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004) ("Subject-matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte*." (citing *Fanning, Phillips & Molnar v. West*, 160 F.3d 717, 720 (Fed. Cir. 1998))).

The Court will grant a motion for summary judgment where there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. RCFC 56(a). The movant bears the initial burden of showing there is no genuine dispute of material fact and may carry that burden by identifying an absence of evidence supporting the nonmovant's case. *GBA Assocs. Ltd. P'ship v. United States*, 171 Fed. Cl. 93, 99 (2024) (citing *Dairyland Power Co-op. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994)). The burden then shifts to the nonmovant to "set out specific facts showing a genuine issue for trial . . . ." *Id.* at 99–100 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

II. Subject-Matter Jurisdiction

As an initial matter, the Court notes that, despite Ms. Yen's insistence that this is an illegal exaction case rather than a tax refund case, there is no difference between the two legal theories in this context. An illegal exaction claim "involves money that was 'improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'" *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967), *abrogated in part on other grounds by Malone v. United States*, 849 F.2d 1441, 1444–45 (Fed. Cir. 1988)). When a taxpayer brings an illegal exaction claim against the IRS for money paid in federal income taxes, that is a type of illegal exaction claim known as a tax refund claim. *Id.* ("The classic illegal exaction claim is a tax refund suit alleging that taxes have been improperly collected or withheld by the government." (citing *City of Alexandria v. United States*, 737 F.2d 1022, 1028 (Fed. Cir. 1984))). Accordingly, the Court refers to Ms. Yen's claims of illegal exaction by their more specific classification: tax refund claims.[19]

[19] In attempting to distinguish between tax refund claims and illegal exaction claims, Ms. Yen seemingly seeks to hold the government liable for not just assessing too much in taxes, penalties, and interest, but a general pattern of mistreatment. ECF 19 at 1–2 ("This is fundamentally a constitutional Illegal Exaction action . . . . The central issue concerns an ongoing, bad-faith course of administrative conduct whereby individual IRS agents have willfully manipulated, backdated, and erased historical accounting records mid-litigation to forcefully extract and conceal Plaintiff's liquid assets contrary to statutory authority." (emphasis omitted)). To the extent Ms. Yen attempts to assert something more than a tax refund claim, it seems she intends to plead claims sounding under 5 U.S.C. § 702 (provision of the Administrative Procedures Act affording relief to people "suffering legal wrong because of an agency action"). This Court can entertain only her tax refund claims; it does not have jurisdiction over § 702 claims. *Gilham v. United States*, 164 Fed. Cl. 1, 8, *aff'd*, No. 23-1507, 2023 WL

Turning to the Rule 12(b)(1) motion, the government correctly identifies the jurisdictional requirement that a plaintiff file a tax refund claim with the IRS before filing suit in this Court. *Brown v. United States*, 22 F.4th 1008, 1011 (Fed. Cir. 2022) (citing *United States v. Dalm*, 494 U.S. 596, 609–10 (1990)); *see* 26 U.S.C. § 7422(a) ("No suit prior to filing claim for refund[:] No suit . . . shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary . . . ."). The government asserts that, as a matter of fact, Ms. Yen never filed a tax return for tax year 2015, so the Court does not have jurisdiction over her refund claim for that year. In support, the government submits a certified transcript of Ms. Yen's tax account for 2015 documenting "NO RECORD OF RETURN FILED." ECF 20-1 at 2. Implicit in the government's argument is the premise that filing a "claim" within the meaning of 26 U.S.C. § 7422(a) entails filing an income tax return. That premise is well-supported, as the governing Treasury Regulation provides that, "[i]n general, in the case of an overpayment of income taxes, a claim for credit or refund of such overpayment shall be made on the appropriate income tax return." 26 C.F.R. § 301.6402-3(a)(1).

While Ms. Yen attached to her complaint a facially complete IRS Form 1040 for tax year 2015 dated April 24, 2017, ECF 1-1 at 12–13, she did not submit any evidence that the federal income tax return was actually filed with the IRS.[20] This absence of supportive evidence, weighed against the government's certification of "NO RECORD OF RETURN FILED," ECF 20-1 at 2, leaves the Court with no choice but to conclude that Ms. Yen has not carried her burden to prove that jurisdiction is proper. *See Harris v. United States*, 44 Fed. Cl. 678, 682 (1999) ("The IRS's administrative files . . . are presumed to be true, accurate, and correct . . . ." (citing *Sun Oil Co. v. United States*, 215 Ct. Cl. 716, 746 (1978))), *aff'd*, 232 F.3d 912 (Fed. Cir. 2000) (per curiam). Accordingly, Ms. Yen's federal income tax refund claim for tax year 2015 must be dismissed for lack of subject-matter jurisdiction.

Ms. Yen's claims for tax years 2012, 2014, 2016, 2019, 2021, 2022, and 2024 fall to the same jurisdictional defect. For each of those years, Ms. Yen has neither alleged that she filed a tax return claiming a refund nor submitted any such return to the Court. The Court is therefore unpersuaded that it has subject-matter jurisdiction over those claims and sua sponte dismisses them pursuant to

5814413 (Fed. Cir. Sept. 8, 2023) (per curiam) (first citing *Martinez v. United States*, 333 F.3d 1295, 1313 (Fed. Cir. 2003); and then citing *Murphy v. United States*, 993 F.2d 871, 874 (Fed. Cir. 1993)).

[20] The certified transcript of Ms. Yen's tax account for 2015 notes a six-month extension of time, until October 15, 2016, to file an IRS Form 1040. ECF 20-1 at 2. The IRS Form 1040 appended to Ms. Yen's complaint, dated April 24, 2017, is more than six months beyond this window. In any case, the certified transcript dated February 25, 2026, makes no mention of the IRS's receipt of Ms. Yen's proffered IRS Form 1040 for tax year 2015.

RCFC 12(h)(3).[21] *See Jackson v. United States*, 162 Fed. Cl. 282, 290 (2022) ("While this Court must liberally construe the filings of *pro se* plaintiffs, such plaintiffs still have the burden of establishing the Court's jurisdiction by a preponderance of the evidence." (first citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); then citing *Landreth v. United States*, 797 F. App'x 521, 523 (Fed. Cir. 2020) (per curiam); and then citing *Curry v. United States*, 787 F. App'x 720, 722 (Fed. Cir. 2019) (per curiam))). For tax years 2013, 2017, 2018, and 2023, however, Ms. Yen has either alleged that she filed a tax return claiming a refund or proffered evidence thereof. ECF 22 at 1–2; ECF 22-2. At this juncture, that is enough to satisfy the Court that it has jurisdiction over Ms. Yen's claims for tax years 2013, 2017, 2018, and 2023. *See Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005) ("[P]ro se pleadings are to be liberally construed." (citing cases)).

III. Tax Year 2018

The government argues that, by operation of law, Ms. Yen's refund claim for tax year 2018 is subject to a two-year lookback period set by the filing of her IRS Form 1040-X on May 16, 2023. On this premise, the government submits Ms. Yen cannot recover tax payments made in satisfaction of her assessed 2018 tax arrearage before May 16, 2021.[22] Since that date, a total of $4,452 has been credited to Ms. Yen's account, comprised of a $2,908 credit from tax year 2021 applied to Ms. Yen's tax year 2018 arrearage and a series of payments summing $1,544.

Under the applicable statutory scheme, if a taxpayer does not file a refund claim within three years of when they originally filed their return, their potential refund is limited by a two-year lookback period from the date the refund claim was filed. *Tiernan v. United States*, 113 Fed. Cl. 528, 532 (2013); *see* 26 U.S.C. § 6511(b)(2)(B). On the record presented, Ms. Yen first claimed a refund for tax year 2018 when she filed her first IRS Form 1040-X on May 16, 2023.[23] Accordingly, the two-year lookback period dates to May 16, 2021. Certified IRS records document that Ms. Yen has remitted payments toward her assessed 2018 tax arrearage in the aggregate amount of $4,452 since that date. ECF 21-1. Ms. Yen has failed to raise

---

[21] This dismissal is, of course, without prejudice. *See Arnouse Digital Devices Corp. v. United States*, 162 Fed. Cl. 52, 57 (2022) ("[A] dismissal [for lack of subject matter jurisdiction] is not a decision on the merits and has no res judicata effect that would prevent the reinstitution of the action in a court that has subject matter jurisdiction over the controversy." (quoting 5B WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1350 (3d ed. 2022))). If Ms. Yen cures the jurisdictional defects as a matter of fact or, at least, adequately alleges that jurisdiction is proper, she may plead her claims anew.

[22] Ms. Yen paid $11,980 toward her assessed arrearages for tax year 2018 before May 16, 2021. ECF 21-1. This is the amount the government is asking the Court to deem unrecoverable.

[23] There is no indication Ms. Yen claimed a refund in her original IRS Form 1040 for tax year 2018. On the contrary, an IRS transcript for tax year 2018 indicates that when Ms. Yen filed her original return on April 2, 2020—nearly six months after her extended filing deadline of October 15, 2019—she remitted a $441 payment. ECF 21-1 at 2. This left an assessed tax liability for tax year 2018 of $7,970, excluding penalties and interest.

any genuine dispute of fact as to these conclusions. Her potential recovery for tax year 2018 is accordingly limited to a maximum of $4,452, plus interest.

IV. Miscellaneous Claims

With respect to the miscellaneous allegations listed in the background section of this opinion, Ms. Yen suggests they show a pattern of mistreatment by the IRS. As noted above, such charges do not independently state a cognizable claim in this Court.[24] To the extent Ms. Yen seeks to rely on the stated allegations and documents cited in support, she must explain how they demonstrate specific entitlements to money by, for example, connecting them to the remaining claims before this Court (i.e., her tax refund claims for tax years 2013, 2017, 2018, and 2023).

For completeness, one final matter merits attention. On August 24, 2026, as supplemented on August 28, 2026,[25] Ms. Yen filed a motion to compel. ECF 23. Specifically, Ms. Yen seeks the IRS's production of unredacted (i.e., "complete, raw, and unedited") copies of the following internal data presumably relating to the tax years in issue: Individual Master File (IMF) transcripts, tax module (TXMODA) data strings, and Integrated Data Retrieval System (IDRS) command logs. *Id.* at 1, 5. By operation of RCFC 7.2(a)(1) and 6(a)(1)(C), the government's response is due on or before September 8, 2026. The Court defers ruling on plaintiff's motion to compel until briefing is complete.

**CONCLUSION**

For the foregoing reasons,

(1) The Clerk of Court is directed to modify the docket entry at ECF 22 to refer to that document as "Supplement 3 re: [1] Complaint."

(2) Defendant's motion to dismiss plaintiff's refund claim for tax year 2015 for lack of subject-matter jurisdiction under RCFC 12(b)(1) (ECF 20) is granted, and the Clerk of Court is directed to dismiss plaintiff's complaint (ECF 1), as supplemented, as to tax year 2015.

(3) The Clerk of Court is directed to dismiss plaintiff's complaint (ECF 1), as supplemented, as to tax years 2012, 2014, 2016, 2019, 2021, 2022, and 2024 for lack of subject-matter jurisdiction under RCFC 12(h)(3).

---

[24] *See supra* note 19.

[25] On August 28, 2026, before defendant's response deadline, Ms. Yen submitted a reply in further support of her motion to compel, which the Clerk's Office rejected as defective. *See supra* note 15. The Court will construe this submission as a supplement to Ms. Yen's August 24, 2026 motion to compel.

(4) Defendant's motion for partial summary judgment limiting plaintiff's maximum potential recovery for tax year 2018 to $4,452, plus interest (ECF 21), is granted, and the Clerk of Court is directed to dismiss plaintiff's complaint (ECF 1), as supplemented, as to tax year 2018 for any claimed recovery in excess of $4,452, plus interest.

(5) The Clerk of Court is directed to file plaintiff's defective submission dated August 28, 2026, as a supplement to plaintiff's motion to compel (ECF 23).

(6) Defendant shall file a response to plaintiff's motion to compel (ECF 23) on or before **September 8, 2026**.

(7) Defendant shall file an amended answer and/or dispositive motion(s) addressing plaintiff's claims for tax years 2013, 2017, and 2023 on or before **September 15, 2026**.[26]

It is so **ORDERED**.

Armando O. Bonilla
Judge

[26] Defendant need not address tax year 2018 in its amended pleading and/or dispositive motion(s) because that tax year was addressed in defendant's April 9, 2026 answer (ECF 14) as well as defendant's motion for summary judgment (ECF 21), addressed herein.